IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **DORETHA HARDEN,**<br>    *Plaintiff,*<br><br>**v.**<br><br>**FAMILY DOLLAR STORES OF**<br>**GEORGIA, LLC,**<br>    *Defendant.* | **CIVIL ACTION NO.**<br>**5:21-cv-00105-TES** |

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Doretha Harden brings this action against Defendant Family Dollar

seeking compensation for alleged injuries she sustained from a fall at a Family Dollar in

Macon, Georgia, on November 7, 2018. [Doc. 1-1, ¶¶ 4–5].

The relevant facts regarding Plaintiff's injuries go back a few years. First, in

February 2017, Plaintiff informed her primary care physician that she was experiencing

"chronic lumbar back pain." [Doc. 27-4, pp. 3–7]. The medical staff took x-rays which

showed "mild S-type scoliosis thoracolumbar spine," along with "mild to moderate

degenerative anterolisthesis," and other back problems. [Doc. 27-2, pp. 325–26]. Plaintiff

continued to complain about her back pain during her visits in April, July, and August

2017, and January 2018. [Doc. 27-4, pp. 8–19].

In March 2018, Plaintiff visited a new primary care facility and informed the staff

of continued lower back pain, but now with "radiation to [her] right leg." [27-2, pp. 334,

336]. Again, in July 2018, Plaintiff visited a new medical provider—Dr. Barnes—and reported similar lower back pain. [Doc. 27-2, p. 279]. Dr. Barnes diagnosed Plaintiff with "low back pain," "degenerative scoliosis," and "sciatica," and referred her to physical therapy. [Doc. 27-2, p. 280]. In her August 2018 physical therapy visit, Plaintiff rated her pain as a 9.5 out of 10. [Doc. 27-6, p. 2]. Throughout physical therapy, Plaintiff continued to report lower back pain. [Doc. 27-2, p. 109].

After reporting the continuing pain to her doctors, they ordered medical images of Plaintiff's back, which showed "multilevel spondylosis," and "degenerative 3 mm anterolisthesis at L4 over L5." [Doc. 27-2, p. 295]. Further, the images showed "disc bulging" at various levels of Plaintiff's spine, and "ligamentum flavum thickening," among other problems. [*Id.*]. In an attempt to treat the problems, Plaintiff received lumbar injections. [*Id.* at pp. 105, 291, 293]. Plaintiff continued to report varying levels of pain up to two days before the fall, when she told medical providers that treatments didn't resolve her lower back pain. [Doc. 27-5, pp. 8–11].

Now back to the incident preceding this action.

Plaintiff alleges that, while shopping at Family Dollar, she slipped and fell in an aisle. [Doc. 29, p. 1]. After falling, Plaintiff noticed a green substance on her clothes and on the floor surrounding her. [*Id.*]. A Family Dollar employee came over to assist and also noted the green substance on the floor. [*Id.*].

Following her fall, Plaintiff went to the emergency room at Coliseum Northside

Hospital, complaining of severe knee pain. [Doc. 29, p. 2]. Medical staff took x-rays,

prescribed pain medication, and instructed Plaintiff to follow up as needed. [*Id.*].

The day after the fall, Plaintiff went to Piedmont Orthopedic Complex where

staff gave Plaintiff an injection for her pain. [*Id.*]. Before receiving the injection, she told

medical providers her lower back pain was present but was not as "bad as prior to the

injections." [Doc. 27-2, p. 266]. The doctors then told her to follow up in six weeks. [Doc.

29, p. 2]. Around a month later, Plaintiff followed up and complained of increasing back

pain. [*Id.*]. The medical providers then referred her to the Georgia Neurosurgical

Institute for evaluation and treatment. [Doc. 27-2, p. 287]. Following several evaluations,

Plaintiff's medical team performed a L4 to L5 decompression. [Doc. 27-8, pp. 2–3].

Plaintiff participated in physical therapy and recovered well for around a year. [Doc.

27-7, p. 8]. Then, Plaintiff again reported low back pain and her doctors decided to

perform a second spine decompression surgery. [*Id.*].

Plaintiff filed this action in the State Court of Bibb County on February 24, 2021.

[Doc. 1-1]. Defendant then removed the action to federal court based on diversity

jurisdiction pursuant to 28 U.S.C. § 1332. [Doc. 1]. Following discovery, Defendant filed

this Motion for Partial Summary Judgment [Doc. 27] to bar recovery of damages related

to (1) Plaintiff's two total knee replacements, and (2) any treatment she received after

the fall for alleged back injuries. [Doc. 27-10, p. 1]. In her Response [Doc. 29], Plaintiff

agreed to not pursue damages related to her two knee replacement surgeries. [Doc. 29,

p. 3]. As such, the Court only reviews the back injury and related treatments.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).[1] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323).

---

[1] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

Rather, "the moving party simply may show—that is, point out to the district court—

that there is an absence of evidence to support the nonmoving party's case." *Four*

*Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively,

the movant may provide "affirmative evidence demonstrating that the nonmoving

party will be unable to prove its case at trial." *Id.*

     If this initial burden is satisfied, the burden then shifts to the nonmoving party,

who must rebut the movant's showing "by producing . . . relevant and admissible

evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d

1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does

not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not

significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*,

477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's

position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Further, where a party fails to address another party's assertion of fact as required by

Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for

the purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for
> trial. Rather, on summary judgment, the district court must accept as fact

all allegations the [nonmoving] party makes, provided they are sufficiently
supported by evidence of record. So[,] when competing narratives emerge
on key events, courts are not at liberty to pick which side they think is more
credible. Indeed, if "the only issue is one of credibility," the issue is factual,
and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

Stated differently, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and

all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable

jury could make more than one inference from the facts, and one of those permissible

inferences creates a genuine issue of material fact, a court cannot grant summary

judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at

1263.

## **DISCUSSION**

Defendant primarily argues that because Plaintiff failed to introduce any expert

testimony to prove causation of her back injury, she cannot recover for the injury or

subsequent treatment. *See generally* [Doc. 27-10]. Defendant concedes that under

Georgia law, typical negligence cases do not require expert testimony. *See Hawkins v.*

*DeKalb Med. Ctr., Inc.*, 721 S.E.2d 131, 139 (Ga. Ct. App. 2011). But Defendant argues that

this case isn't among those typical negligence actions. Rather, Defendant asserts that

because of Plaintiff's pre-existing medical conditions, there are "specialized medical

questions" requiring medical expert testimony. *Id.* (citing *Cowert v. Widener*, 697 S.E.2d 779 (Ga. 2010)). The Court agrees.

As noted, in typical negligence cases, juries are trusted to discern the causal link between a defendant's conduct and the resulting injury without help from experts. *Hawkins*, 721 S.E.2d at 139. However, in cases where that causal link is "beyond common knowledge and experience," an expert's testimony is necessary. *Id.* (citing *Cowert*, 697 S.E.2d at 779). This is especially true when the plaintiff suffers from a pre-existing condition. *See Eberhart v. Morris Brown Coll.*, 352 S.E.2d 832 (Ga. Ct. App. 1987). In those circumstances, a "causal connection, requiring medical expert testimony, must be established[.]" *Jordan v. Smoot*, 380 S.E.2d 714, 715 (Ga. Ct. App. 1989). The only caveat to this rule applies when the pre-existing condition has subsided prior to the incident in question. *See Cox v. Rewis*, 429 S.E.2d 314 (Ga. Ct. App. 1993). Otherwise, "if there is evidence that the complained-of injury is a preexisting condition, the plaintiff must produce medical testimony explaining why the tortious event aggravated the prior condition to survive a motion for summary judgment." *Bruce v. Classic Carrier, Inc.*, No. 1:11-cv-01472-JEC, 2014 WL 1230231, at *7 (N.D. Ga. Mar. 24, 2014).

In some cases, courts have allowed plaintiffs to move past summary judgment where an expert opined it was *possible* that the tortious conduct aggravated the pre-existing injury, but only because the expert testimony was paired with other evidence to supplement the claim of aggravation. *Id.* (citing *Rodrigues v. Georgia-Pacific Corp.*, 661

S.E.2d 141 (Ga. Ct. App. 2008)). For example, in *National Dairy Products v. Durham*, 154

S.E.2d 752 (Ga. Ct. App. 1967), the plaintiff testified that he was in good health prior to a

collision that allegedly activated a tumor that was previously dormant. In that case, the

Georgia Court of Appeals held that the testimony of experts stating it was possible,

combined with the plaintiff's own testimony regarding his prior health, moved plaintiff

past summary judgment. *Durham*, 154 S.E.2d at 754.

Similarly, in *Rodrigues*, the plaintiff claimed that exposure to chemicals caused

pneumonia that led to a pulmonary edema. *Rodrigues*, 661 S.E.2d at 142–43. To support

the causal link, the plaintiff produced affidavits of emergency room staff that went

beyond the testimony of the retained expert and asserted that the tortious conduct *likely*

caused the injury. *Id.* at 143–44. The Georgia Court of Appeals held that was sufficient

to withstand summary judgment because "medical testimony stated only in terms of a

'possible' cause may be sufficient when supplemented by probative non-expert

testimony on causation." *Id.* at 144.

That's not the case here.

First, while Dr. Barnes did opine that an injury like Plaintiff's fall could

*hypothetically* aggravate a pre-existing condition, he testified that he had no opinion

about the cause of Plaintiff's back pain. [Doc. 27-1, Barnes Depo., pp. 6:13–18; 17:8–10].[2]

---

[2] Plaintiff's Response [Doc. 29] points to other portions of Barnes' deposition as opining to causation. However, upon closer inspection, those portions are related to the knee injuries, not the back injury. *See* [Doc. 27-1, Barnes Depo., pp. 33:20–22; 34:1–18].

Given Dr. Barnes' specific testimony that he could not offer any opinion as to the cause of Plaintiff's back pain, his untethered hypothesis fails to raise an inference of causation. *See Cowart*, 697 S.E.2d at 790.

Even accepting that testimony as enough to be paired with non-expert testimony, the record doesn't show anything to supplement Dr. Barnes' hypothetical link. Instead, Plaintiff admits that her medical records show she complained of low back pain up to 2 days before the fall. *Compare* [Doc. 27-9, ¶ 36], *with* [Doc. 29-1, ¶ 36]. Again, Plaintiff even admits that the day after the fall, her medical records show that her lower back pain was hurting less than it was prior to treatments. *Compare* [Doc. 27-9, ¶ 37], *with* [Doc. 29-1, ¶ 37]. Thus, Plaintiff fails to show that her pre-existing injury had subsided such that a lay jury could infer causation. She also fails to give supplemental evidence to support Dr. Barnes' hypothetical causal link.[3]

This case is among those negligence cases that offers complex issues of causation. Because Plaintiff fails to produce expert testimony to assist a jury in determining the cause of her back injury, she cannot recover for the treatment that followed. *See Jones v. Wal-Mart, Assoc., Inc.*, No. 1:19-cv-03705-SDG, 2021 WL 243285, at *4 (N.D. Ga. Jan. 25, 2021).

---

[3] Plaintiff also asserts that the argument of expert testimony is "rendered moot due to the fact that the parties had the opportunity to depose one of Ms. Harden's treating physicians, Dr. William Barnes[.]" [Doc. 29, p. 9]. However, the question of expert testimony is directly tied to causation—an element of Plaintiff's negligence claim that she must prove. *See Weller v. Blake*, 726 S.E.2d 698, 702 (Ga. App. 2012); *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). Defendant's opportunity to depose Plaintiff's doctor has no bearing on this motion and doesn't prove causation.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment [Doc. 27]. Consequently, the Court **DISMISSES** Plaintiff's claims of (1) damages for her two knee replacement surgeries and related subsequent treatment and (2) alleged back injuries and related subsequent treatment.

The Court notes that discovery ended on May 4, 2022, and the dispositive motion deadline passed on July 1, 2022. *See* [Doc. 22]; [Doc. 25]. Following this Order, it appears the case is ready for trial or other resolution. In that regard, the Court **ORDERS** the parties to participate in mediation of this case within 60 days of this Order. Within 3 days of the completion of the mediation, the parties shall file a joint report of mediation indicating the results of the mediation. In the event the mediation is not successful, the Court will set this case for trial in the February 2023 term.

**SO ORDERED**, this 26th day of September, 2022.

S/ Tilman E. Self, III

**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**